UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MECCA ALLAH SHAKUR,
*Plaintiff*,

v.

ADMINISTRATIVE REMEDY
COORDINATOR KING, *et al.*
*Defendants*.

No. 3:20-cv-00303 (VAB)

**INITIAL REVIEW ORDER**

Mecca Allah Shakur ("Plaintiff"), *pro se* and currently incarcerated at Corrigan-Radgowski Correctional Center in Uncasville, Connecticut ("Corrigan"), has sued Administrative Remedy Coordinator King ("AR Coordinator King"), Warden Robert Martin, Warden Corcella, and Correctional Officer Duquette (collectively, "Defendants") under 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights by conducting an improper strip search and denying him access to administrative remedies and the courts. Compl., ECF No. 1 (Mar. 5, 2020). Mr. Shakur seeks damages as well as declaratory and injunctive relief.

For the following reasons, the Complaint must be **DISMISSED**.

**I.    BACKGROUND**

Mr. Shakur was confined at Corrigan at all times relevant to this action. Compl. ¶ 3.

On July 26, 2016, while confined at Corrigan, Mr. Shakur allegedly learned from Warden Martin that he had abused the grievance system by filing repetitive grievances and could not file any more grievances challenging the strip search policy. *Id.* ¶ 8. Mr. Shakur allegedly had filed multiple grievances challenging the practice of having inmates bend at the waist and spread their buttocks during a strip search. *Id.* ¶ 9.

On October 26, 2019, correctional officials allegedly brought Mr. Shakur to the restrictive housing unit at Corrigan. *Id.* ¶ 10. During a strip search, Officer Duquette allegedly ordered Mr. Shakur to bend over and spread his buttocks. *Id.* Mr. Shakur allegedly objected, *id.,* but Officer Duquette allegedly insisted that Mr. Shakur comply with the order. *Id.* When Mr. Shakur continued to argue, other officers allegedly approached with restraints. *Id.* Mr. Shakur allegedly complained that the action was "voyeurism" and violated the Prison Rape Elimination Act, but complied nevertheless. *Id.*

On November 7, 2019, Mr. Shakur allegedly wrote to Deputy Warden Cotta complaining about the strip search procedure. *Id.* ¶ 11. Mr. Shakur allegedly stated that he should not have been required to bend over and spread his buttocks when he had performed an alternative procedure of squatting and coughing. *Id.* Mr. Shakur argued that correctional staff should not be permitted to enforce prison directives in any manner they choose, but should follow the directives as written. *Id.*

On November 12, 2019, Mr. Shakur allegedly received the receipt for the Freedom of Information request he filed "seeking documents on [Administrative Remedy] 6.7 that state an inmate must bend at the waist and spread his buttocks for the strip search procedure." *Id.* ¶ 12.

On December 10, 2019, Mr. Shakur allegedly submitted a complaint to Warden Corcella about the strip search policy, stating that he knew the requirement was not department policy because he had recently settled a case involving this issue. *Id.* ¶ 13. The following day, Mr. Shakur allegedly sent a request to AR Coordinator King asking whether the prohibition on filing grievances challenging the strip search policy was still in effect. *Id.* ¶ 14.

On December 17, 2019, Mr. Shakur allegedly received a response to both the complaint and request, advising him that he could seek relief with the courts. *Id.* ¶¶ 15,16. According to Mr.

Shakur, AR Coordinator specifically responded, "You exhausted with a Level 3 so you can attempt with courts if you choose. Per A.D. 9.6. repetitive request for [administrative remedy] may not be filed by the same inmate when a final response has been provided and theres [sic] been no change in circumstances." *Id.* ¶ 16.

On March 5, 2020, Mr. Shakur filed his Complaint and moved for leave to proceed *in forma pauperis*. Compl.; Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2 (Mar. 5, 2020).

On March 11, 2020, the Court granted his motion for leave to proceed *in forma pauperis*. Order, ECF No. 7 (Mar. 11, 2020).

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it

rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### III. DISCUSSION

In his Complaint, Mr. Shakur asserts ten claims for relief: (1) Officer Duquette subjected him to cruel and unusual punishment by requiring him to submit to a strip search policy in excess of the requirements of departmental directives; (2) Officer Duquette's actions in requiring Mr.

Shakur to submit to the excessive strip search policy constituted sexual assault and harassment; (3) Warden Martin prevented Mr. Shakur from exhausting any future claim by prohibiting him from filing grievances challenging the strip search procedure; (4) Warden Martin denied Mr. Shakur access to the courts; (5) AR Coordinator King denied Mr. Shakur access to grievance procedures by enforcing Warden Martin's prohibition; (6) AR Coordinator King denied Mr. Shakur access to courts; (7) Warden Corcella subjected Mr. Shakur to cruel and unusual punishment by enforcing the excessive strip search policy; (8) Warden Corcella violated Mr. Shakur's right to due process by failing to inform inmates or post notices about a new strip search policy; (9) Warden Corcella denied Mr. Shakur access to the grievance procedures by referring Mr. Shakur's complaints to AR Coordinator King; and (10) Warden Corcella denied Mr. Shakur access to the courts by referring his complaint to AR Coordinator King.

### A. Claims Based on Denial of Access to Grievance Procedures

Mr. Shakur's third, fifth, and ninth claims are for denial of access to grievance procedures. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed. *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right" and "neither state policies nor 'state statutes . . . create federally protected due process entitlements to specific state-mandated procedures'" (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003))).

Accordingly, because Mr. Shakur has no constitutionally protected right to file a grievance, any claims against Warden Martin, Warden Corcella, and AR Coordinator King, for denial of access to prison grievance procedures will be dismissed under 28 U.S.C. § 1915A(b)(1).

### B. Claims Based on Denial of Access to the Courts

In his fourth, sixth, and tenth claims, Mr. Shakur contends that the denial of access to prison grievance procedures has resulted in the denial of his right of access to the courts.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are, in fact, unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

Mr. Shakur has submitted evidence that he has been banned from submitting grievances challenging the strip search procedure since 2016, and that the ban was still in place when he tried to address the search underlying this action. Thus, as administrative remedies were not available to him for this claim, the failure to exhaust administrative remedies does not preclude Mr. Shakur from filing this action. *See Riddick*, 731 F. App'x at 13 (grievance restrictions did not deny access to courts because "the defendants did not restrict his right to file civil actions and the [PLRA's] exhaustion requirement would not preclude him from asserting § 1983 claims in federal court that were barred by grievance restrictions"). Indeed, Defendants informed Mr. Shakur that he could not file a grievance, but could pursue the matter in court. *See* Compl. ¶ 16 (alleging that AR Coordinator specifically responded that while he could not file another grievance, he could "attempt [to file] with [the] courts").

Accordingly, because Mr. Shakur was not denied access to the courts, *see id.*, his claims against Warden Martin, Warden Corcella, and AR Coordinator King for denial of access to the

courts will be dismissed under 28 U.S.C. § 1915A(b)(1).

### C. Claims Based on Strip Search Procedures

In his first and seventh claims, Mr. Shakur alleges that Corrigan's strip search procedure violates departmental directives and further constitutes cruel and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution.

Administrative Directive 6.7 defines the various searches that can be performed in a correctional facility.[1] *See* Administrative Directive 6.7: Searches Conducted in Correctional Facilities, CT.GOV, *available at* https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited July 22, 2020) ("A.D. 6.7"). A strip-search is defined as "a visual body cavity search which includes a systematic visual inspection of an unclothed person's hair [and] body cavities . . . ." *Id.* at § 3(p). The precise manner in which the search is conducted is not specified in the directive. *See id.* Thus, although Mr. Shakur is correct that the directive does not require inmates to bend and spread their buttocks, neither does it require that they be permitted to squat and cough. Mr. Shakur has alleged no factual basis for a claim that the manner of the search violated any established prison directives or otherwise provided a basis for a viable constitutional claim.

To state an Eighth Amendment claim for unconstitutional conditions of confinement, Mr. Shakur must allege that "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir.

---

[1] The court may take judicial notice of the Department of Correction Administrative Directives. *See Chambers v. Johnpierre*, No. 3:14-cv-1802(VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016) (taking judicial notice of Administrative Directive 9.6 on the Department of Correction's website) (citations omitted); *see also Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, NO. 11 Civ. 8921 (DAB), 2013 WL 6670584, at *1 n.1 (S.D.N.Y. Mar. 29, 2013) ("The Court generally has discretion to take judicial notice of internet material." (citations omitted)).

2013) (internal quotation marks and citations omitted). Under the Eighth Amendment, the court considers if a strip search was done "maliciously and sadistically," or for invidious reasons of intimidation, harassment, or embarrassment. *Harris v. Miller*, 818 F.3d 49, 65 (2d Cir. 2016).

While Mr. Shakur complains about the strip search, under A.D. 6.7, "[a] strip-search shall be conducted . . . [u]pon initial placement in a specialized housing unit, to include . . . Restrictive Housing." A.D. 6.7 at § 5(b)(vi)(7). Rather than conducted "maliciously and sadistically," *see* Compl. ¶ 21, as alleged by Mr. Shakur, the search was conducted consistent with the correctional facility's own rules.

Courts have dismissed claims for searches under similar circumstances. *See, e.g., Galarza v. Erfe*, No. 3:18-cv-663 (JAM), 2019 WL 121784, at *4 (D. Conn. Jan. 7, 2019) (dismissing strip search claim in connection with search for contraband where inmate was required to spread buttocks); *Dixon v. Santiago*, No. 3:15-cv-1575 (JAM), 2015 WL 9582729, at *2–3 (D. Conn. Dec. 30, 2015) (dismissing Fourth and Eighth Amendment claims for damages based on strip search filmed and conducted in view of other inmates and correctional staff).

Courts have permitted these claims to proceed, but only where the facts showed no justification for the search. *See, e.g., Lexis v. Bellemare*, No. 3:18-cv-1403 (JAM), 2019 WL 1596571, at *3–4 (D. Conn. Apr. 15, 2019) (permitting strip search claim to proceed where inmate alleged that he was removed from cell and subjected to search for no reason other than humiliation). In addition, the Supreme Court has held that the precise search Mr. Shakur describes was a "reasonable response[] by [detention facility] officials to legitimate security concerns." *Bell v. Wolfish*, 441 U.S. 520, 558–61 (1979) (concluding that policy that "required [inmates] to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution" did not violate the Fourth

Amendment or due process).

Accordingly, Mr. Shakur fails to state a cognizable Eighth Amendment claim, and this claim will be dismissed.

### D. Sexual Assault or Harassment Claims

In his second claim, Mr. Shakur characterizes Officer Duquette's actions requiring him to submit to the strip search as sexual assault or harassment in violation of his rights under the Eighth Amendment. Sexual abuse of a prisoner by prison officials "may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 860–61 (2d Cir. 1997). To rise to this level, however, the abuse must be repetitive or objectively severe, and the product of more than mere neglect. *Id.* at 861. In *Boddie*, for example, the multiple incidents of verbal harassment, touching and pressing against the inmate's body were not severe enough to constitute an Eighth Amendment violation. *Id.*

Sexual harassment claims typically involve unwarranted touching. *See, e.g., Vogelfang v. Capra*, 889 F. Supp. 2d 489, 508 (S.D.N.Y. 2012) (stating that the court had "found no case in which a plaintiff had established an actionable claim of sexual harassment under *Boddie* without having physical contact with the alleged perpetrator"). Mr. Shakur does not allege that Officer Duquette touched him during the search. Mr. Shakur only alleges he was required to bend and spread his own buttocks. Because Mr. Shakur has failed to allege physical contact, he fails to allege a plausible Eighth Amendment claim under *Boddie* for sexual assault or sexual harassment.

Mr. Shakir also alleges that the search was humiliating. A strip search is "of an intensely personal nature," requiring correctional staff to examine the body of the inmate to determine whether he has concealed weapons or contraband. *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d

Cir. 2015). But, unless the search is conducted in an unreasonable manner, such as if the officer conducting the search intends to humiliate the inmate or if he "deriv[es] sexual arousal or gratification from the contact," the search is not unconstitutional. *Id.* In *Crawford*, the [correction?] officer's actions also involved unwanted touching. *Id.* at 255. Humiliation alone, however, is not sufficient to support an Eighth Amendment claim. *See Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *5 (D. Conn. June 8, 2018) (citing cases upholding use of strip searches to discover contraband despite humiliation to inmates); *see also Vaughn v. Strickland*, No. 12 Civ. 2696 (JPO), 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013) ("Strip searches of inmates . . . are constitutionally valid if they are reasonable related to a legitimate penological interest. . . . Even where inmates allege aggressive or inappropriate behavior during strip searches, courts are reluctant to find that such activity rises to the objectively serious level of an Eighth Amendment violation." (citations and internal quotation marks omitted)).

Mr. Shakir alleges no inappropriate behavior by Officer Duquette. And his subjective views about this search procedure constituting voyeurism does not otherwise state a plausible claim for sexual assault or sexual harassment. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions" or a 'formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)); *see also id.* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 570)).

Accordingly, these claims will be dismissed.

### E.  Due Process Claims

Finally, in his eighth claim, Mr. Shakur contends that Warden Corcella violated his right to due process by failing to post notices or otherwise informing inmates of the new strip search policy.

To state a due process claim under Section 1983, Mr. Shakur must establish a protected liberty interest. *See Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). An inmate's liberty interests arise from the Fourteenth Amendment Due Process Clause or state statutes or regulations. *Id.* The Due Process Clause protects only against restraints or conditions of confinement that "exceed [ ] the sentence in . . . an unexpected manner." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). There is no liberty interest under the Due Process Clause in being strip searched in a particular manner. Because Administrative Directive 6.7 does not include restrictions as to how a strip search should be performed, it also does not give rise to a protected liberty interest in one method as opposed to another. Thus, there is no legal basis for a due process claim.

In addition, Mr. Shakur alleges that Warden Martin banned him from filing grievances in 2016 because he filed repetitive grievances challenging this same strip search policy. Even if he had a protected liberty interest, as the policy was in place before Warden Corcella assumed the position of warden, there was no new strip search policy during his tenure. As a result, Mr. Shakur's due process claims will be dismissed as lacking a legal or factual basis.

Accordingly, Mr. Shakur's Complaint lacks any viable legal claims and will be dismissed in its entirety.

## IV.    CONCLUSION

For the reasons stated above, the Complaint is **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 24th day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE